P. A. Davis v. Commissioner.
Davis v. Commissioner
Docket No. 26090.
United States Tax Court
1952 Tax Ct. Memo LEXIS 150; 11 T.C.M. (CCH) 704; T.C.M. (RIA) 52216; 1 Oil & Gas Rep. 997; June 30, 1952
*150 deQuincy V. Sutton, Esq., c/o Wooton and Wooton, Hattiesburg, Miss., for the petitioner. J. Frost Walker, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in the petitioner's income tax for the years and in the amounts as follows: 1944
$3,924.19
1945
500.84
1946
565.95
1947
138.00
The only issue presented is whether the gains realized by petitioner on the sale of certain mineral interests during the respective years constituted ordinary income or long-term capital gains. Findings of Fact The petitioner's income tax returns for the years 1944 through 1947 were filed with the collector of internal revenue for the district of Mississippi. In 1935 the petitioner moved from New Orleans, Louisiana, to Hattiesburg, Mississippi, where he has continued to reside. During 1939 and 1940 the petitioner sold refrigerators on a commission basis for a furniture store in Hattiesburg. Thereafter for a time he sold butane gas equipment for a corporation which transferred to another organization its distributorship for such equipment in the territory in which the petitioner *151 worked. This organization in turn transferred the distributorship for the equipment to another organization, known as Quick & Grice. The petitioner became associated with each of the successive organizations and sold butane gas equipment for them on a commission basis, receiving 10 per cent of the selling price of all equipment actually installed. About the middle of 1946 the petitioner severed his connection with Quick & Grice and discontinued the foregoing activity. However, in 1947 he sold three gas systems for another firm. On some undisclosed date following the entry of the United States into the war and because of the adverse effect of the war on the butane gas equipment business the petitioner began acting as the local agent in the Hattiesburg area for the Reliance Life Insurance Company of Pittsburgh, Pennsylvania. The petitioner reported no income from this source for any of the years in controversy and apparently his connection with that company was terminated prior to 1944. Because of his health the petitioner was not regularly employed on a full-time basis after 1943. While selling refrigerators for the furniture store in Hattiesburg during 1939 and 1940 and during later *152 years, including all the taxable years in controversy except 1944, the petitioner bought mineral [1] interests for others and received as compensation for his services a commission based on the purchase price. The petitioner received nothing in 1944, $1,053.61 in 1945, $869.50 in 1946, and $66 in 1947 as commissions for such services. During the latter part of 1939 or early in 1940 the petitioner began purchasing mineral interests on his own account. From time to time he made sales of interests so acquired. Generally in making sales of interests held for long periods the petitioner was influenced by the favorable price to be had and the proceeds were used to acquire other mineral interests that were selling at lower prices. During the taxable years the petitioner was in the business of buying and selling mineral interests and some of the interests sold by him in those years had been acquired and were held primarily for sale to customers in the ordinary course of such business. Other mineral interests *153 sold by petitioner during the years here in question had been acquired by him so as to have an accumulation of such interests, the production from which he could look to for support when he became old, and were not held by him primarily for sale to customers in the ordinary course of his business. The petitioner, in the course of his buying and selling of mineral interests, did not keep any records wherein the interests bought for sale to customers were segregated from those not bought and held for such sale. The petitioner was not financially able to drill on or develop mineral properties. Most of the mineral interests purchased by him were in properties which were then under lease for development, and those interests purchased with a view to realizing income by reason of production were purchased with the hope of later development and production by the leaseholder. Some of the interests purchased with a view to realizing income from production therefrom were sold by petitioner from time to time. Generally the price at which he could sell such interests determined whether or not he would make the sale. Where the price offered was such that he considered it to his financial advantage *154 to sell, he sold the interest, instead of retaining it. With respect to some of the interests acquired and sold to customers in the course of his business, some were sold to persons who were getting together a block of acreage for a drilling unit, while in some instances petitioner already had buyers prior to his acquisition of the interests. At the beginning of 1944 petitioner's net worth was probably as much as $20,000. His entire income for 1944, $20,773.78, was gain derived from the sale in that year of 16 mineral interests. Of such gain $3,005.70 was from the sale of 10 mineral interests held by petitioner for less than six months and $17,768.08 was from the sale of six interests held for more than six months. Of the latter interests three were acquired in 1940 and three in 1943. The sales of the 10 interests held for less than six months were made to persons residing in the towns of Hattiesburg, Jackson, Lafayette and Laurel, Mississippi. In general the sales made in 1944 were of interests in three areas which were under development and in two of which production began in 1943 and 1944, respectively. Of the interests sold in 1944 those which had been purchased in 1943 and 1944 *155 were held primarily for sale to customers in the course of petitioner's trade or business. The petitioner's entire income for 1945, $8,322.73, was composed of the following items: Commissions from the sale of butane
gas equipment
$ 933.80
Commissions from the purchase of
mineral interests for others
1,053.61
Oil royalties
598.65
Lease rentals
59.75
Gains on sales of mineral interests
5,676.92
$8,322.73 Of the gains realized on sales of mineral interests, $1,651.84 was derived from the sale of 10 such interests which had been held by the petitioner for less than six months. Of such 10 interests three were sold within two days after acquisition and four (possibly five) were sold within five days after acquisition. The remainder of the gains, $4,025.08, was derived from the sale of eight interests which had been held for more than six months. One of the eight interests had been acquired in 1941, four in 1944 and three in February 1945. Of the interests sold in 1945 those which had been purchased in 1944 and 1945 were held primarily for sale to customers in the course of petitioner's trade or business. The petitioner's entire income for 1946, $8,733.79, *156 was composed of the following items: Commissions from the sale of butane
gas equipment
$ 187.25
Commissions from the purchase of
mineral interests for others
869.50
Oil royalties
750.89
Lease rentals
148.76
Gains on sales of mineral interests
6,777.39
$8,733.79 Of the gains realized on sales of mineral interests, $1,065.07 was derived from the sale of eight such interests which had been held by the petitioner for less than six months. Of such eight interests four were disposed of within a week after acquisition. The remainder of the gains, $5,712.32, was derived from the sale of five interests which had been held for more than six months. Two of the five interests had been acquired in 1943 and three in 1945. Of the interests sold in 1946 those which had been purchased in 1945 and 1946 were held primarily for sale to customers in the course of petitioner's trade or business. The petitioner's entire income for 1947, $6,666.17, was composed of the following items: Commissions from the purchase of
mineral interests for others
$ 66.00
Oil royalties
797.28
Lease rentals
310.79
Gains on sales of mineral interests
5,492.10
$6,666.17
*157 Of the gains of $5,492.10 realized on sales of mineral interests, $3,895.58 was derived from the sale of five such interests which had been held by the petitioner for less than six months. Of such five interests two were sold on the day acquired and one was sold the day following acquisition. The remainder of the gains, $1,596.52, was realized on the sale of seven interests which had been held for more than six months. Three of the seven interests had been acquired in 1943 and four in 1944. Of the interests sold in 1947 those sold within six months of their purchase were held for sale to customers in the course of petitioner's trade or business. The petitioner has never had a regularly established office as a place of business. He has never advertised by newspaper, radio or other medium that he was in the business of dealing in mineral interests. Nor has he ever employed anyone to assist him in managing or in buying or selling mineral interests. On occasions negotiations for sales and sales of interests were made at the petitioner's home or at the place of business of others. When in need of money for living expenses, the petitioner, on a few occasions borrowed small amounts from *158 the bank. Usually when in need of money he would go out and attempt to find a purchaser for some mineral interest that he owned. At the time of the hearing petitioner owned five interests which he acquired in 1940, one acquired in 1941, three acquired in 1942, ten acquired in 1943, and nineteen acquired in 1944. These have never been offered for sale and offers to purchase them have been refused. At the time of the hearing the petitioner also owned other mineral interests of an undisclosed number which interests have been acquired at an undisclosed time or times. With respect to a goodly number of these, deductions on account of their worthlessness have been taken and allowed. The gain realized by petitioner on the sale of mineral interests held for less than six months was reported by him as short-term capital gain and that realized from the sale of mineral interests held for more than six months was reported as long-term capital gain. The respondent determined that the mineral interests sold by the petitioner were not capital assets within the meaning of section 117(a)(1) of the Internal Revenue Code and that the gain realized from the sale thereof was *159 to be regarded as ordinary income. Opinion It is the claim of the petitioner that the mineral interests sold by him in the taxable years were capital assets, within the meaning of section 117(a)(1) of the Internal Revenue Code, [1] and that he properly reported the gain therefrom as short-term capital gain and long-term capital gain. Under section 117(a)(1), the mineral interests sold were not capital assets to the extent that, when sold, they were held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, and whether property sold is so held is a question of fact. *160 The evidence, in our opinion, discloses that during the years in question the petitioner was in the business of buying and selling mineral interests to customers in the course thereof, but that does not mean that all of the interests sold in the taxable years were so held. We think it clear and have concluded as a fact that some of the interests sold in the years 1944 through 1947, were at the time of sale held by him primarily for sale to customers within the meaning of the statute, while other interests sold in those years were not. In the main, the evidence in the case consisted of the testimony of the petitioner. That testimony was rather general and did not give much information relating to the individual interests sold. We have no doubt, however, that from the time of the entry of the United States into the World War in 1941, petitioner engaged in the business of buying and selling mineral interests. At the same time, as already stated, we are convinced that he also bought mineral interests with a view to holding them for the purpose of realizing income from production by way of royalties. The proof as to the individual interests is insufficient, however, to give us a conclusive *161 or very satisfactory basis for determining those interests which were acquired by him as an investor and not for sale to customers. We have considered the evidence of record, however, and have made our findings on the basis thereof. Decision will be entered under Rule 50. Footnotes
1. Counsel for the petitioner stated at the hearing that the term as employed in the proceeding was used to refer to oil which was the subject of the transaction in each case.↩
1. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1), or an obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue, or real property used in the trade or business of the taxpayer;↩